Sutliff, J.
No question is shown by the record to have been made by counsel, upon trial in either court, upon the form of the pleadings.
The only question that seems to have been made by counsel, or considered by the court, was the legal effect of the instruments of writing on which the suit was predicated, whether Kelley and Rossman were to be regarded as only severally holden for the payment of the promissory notes by them respectively signed, or whether the covenants contained in the chattel mortgage jointly ^executed by them constituted a joint obligation upon them to pay all the notes on which they were before liable only severally.
It is provided, by section 4 of the act of March 12, 1845. “to. regulate the judicial courts and the practice thereof,” that:
*220 “ In all eases pending in the court of common pleas, or in the Superior Court of Cincinnati, in which a demurrer is overruled, and the case proceeds to the jury, and verdict is rendered against the party that demurred, the opinion of said court on such demurrer may be examined and the final judgment reversed or affirmed by the Supreme Court on a writ of error.” 2 Curwen, 1140.
Regarding the demurrer as having been to the first count only of the declaration, the question presented to us would then be the same upon which the case turned in the district court, that of the legal effect of the instrument of writing.
It is, however, suggested by counsel for defendant in error, that, inasmuch as the demurrer is in fact to the whole declaration, it was necessarily bad, and rightfully overruled. „
If there had been no other reply to the common counts of the declaration, or if the demurrer was legally to be regarded as the reply to the common counts of the declaration, this position, although technical, would be a valid objection to this court considering the legal construction of the instrument of writing. But at the time of filing the last demurrer the common counts of the declaration had been answered by a plea of the general issue, and no leave had been asked or obtained by the demurrant to withdraw his plea; he had only asked and obtained leave to withdraw or perfect his demurrer to the first count.
What was, then, the effect of this irregular pleading — a demurrer not only to the unanswered count, but to the counts on which issue had been already closed by a plea in bar ?
It has been1 held that where the party first demurs to two counts of a declaration, and afterward, and without leave of court, pleads in bar to one of the counts, the dilatory plea — the demurrer— should be considered withdrawn as to the count to which the plea of the general issue had been so pleaded.
This holding is consistent with the rule that the pleading shall *be taken most strongly against the pleader ; that by pleading the general issue he had waived his dilatory plea, and in effect admitted the sufficiency of the count so pleaded to. We think an application of the same principle to this case would prevent the demurrer from applying to the common counts already at issue.' The demurrer would then be, so far as it professed to apply to the common counts, a nullity ; and might well have been regarded by the court, if counsel saw fit to waive the irregularity, as a demurrer *221 only to the first and unanswered count of the declaration. This Court will therefore regard the demurrer, as it seems by consent of counsel to have been treated by-the district court, a demurrer merely to the first count of the declaration.
By virtue of the statute already alluded to, the demurrer, overruled by the district court, presents for our consideration the question : Did the district court err in holding the written instrument set forth on oyer by the demurrant a joint covenant on the part of Rossman and Kelley, to pay Maxwell the §7,000 expressed by the several twenty-eight promissory notes?
The covenants and provisions relied upon by counsel for defendant in error, to establish a joint liability, are all contained in that part of the chattel mortgage called the conditional clause of the instrument. That clause recites the transaction between the parties in substance as 'follows :
“ Whereas said Joshua Maxwell has this day, by bill of sale, sold ” said Rossman and Kelley said steamboat, etc.; and as a condition of the sale was, that said Rossman and Kelley should execute their mortgage as security for said §7,000, part of the purchase money, and which is to be paid “ as hereinafter particularly mentioned and set forth according to the tenor of twenty-eight promissory notes, hereinafter described,” and should effect and assign to said Maxwell the policy of insurance hereinafter mentioned as a further security.
“Now the condition of these presents is expressly this, that if the said Rossman and Kelley shall pay to said Maxwell said $7,000, with interest from date hereof, according to the terms and conditions of twenty-eight promissory notes, each bearing date the 24th day of April, 1850, each in the sum of $250,” etc.; *fourteen of which are made and signed by Rossman, and the other fourteen of like tenor, made and signed by Kelley, and shall effect and assign said policy of insurance, etc., and keep and maintain the insurance good for the amount due, “ then this bill of sale to be void and of no effect.”
“ And the said Rossman and Kelley covenant, promise, and agree to pay the said sum of $7,000 as above.” Subject, however, to the condition, that if default should be made in the stipulations, or any part thereof, Maxwell might take possession of and sell said boat, etc., to pay the amount so due and unpaid.
From this instrument, it appears: 1. That the execution of a *222 bill of sale of tbe boat from Maxwell to the mortgagors, and their execution of their several promissory notes, fourteen in number, for $3,500, by each, of like tenor, and executed severally, and not jointly, and the mortgage for their security, were all agreed upon, and to be executed at one time; 2. The execution of all the writings were consummated at one time, and in accordance with the previous contract; 3. The parties in this conditional clause of the mortgage profess to recite their bargain, under which Maxwell made his bill of sale, and Rossman and Kelley were to make severally and respectively their promissory notes, and how the same were to be secured — to wit, by their mortgage of the boat, at the same date, and a policy of insurance to be thereafter effected by them, and assigned to Maxwell; 4. The writing, although minute and explicit in stating the agreement and understanding of the parties as to the security to be given by the vendees of the steamboat, makes no mention of any change in the terms of the agreement; but, on the contrary, represents the parties as intending by the writing to confirm and ratify the agreement as stated thereby.
In giving a judicial construction to this conditional clause of the chattel mortgage, we must have respect to all the provisions of the instrument, and, if practicable, give them fulL effect.
It appears certain, in the first place, that for the payment of the $7,0í¡0, Rossman and Kelley, for some reason, wished to undertake severally, and to that end executed severally two sets of notes, twenty-eight in all; each of the vendees executing fourteen of *the notes. The fourteen executed by Kelley were of the same date, the same amount, and payable at the same time with those executed by Rossman. Neither was surety for the other upon the notes. But each of the makers agreed to give a joint mortgage of the boat, and to keep the same insured for the benefit of Maxwell. And Maxwell agreed to accept the same as security for the ultimate payment of the notes. There can be no reasonable doubt that this was the original agreement. We here also see that the instrument makes no mention of any.change of this agreement, so that the parties should become jointly holden upon the notes.
But it may be said, the parties may have agreed to certain alterations in the terms of their bargain, and by the writing, in fact, have bound themselves to become jointly liable for the payment of the notes, without reciting in the writing the fact of their having so agreed to alter their, contract in that respect.
*223 But if such agreement to change the terms of their contract were really made, why did not Rossman and Kelley execute their fourteen joint notes instead of their twenty-eight several notes? If it be said they probably had written and signed the twenty-eight notes before the change was agreed upon from several to joint liability for their ¡payment, it may be replied that, even granting all this, Rossman and Kelley, if they had really consented to become each other’s surety could very readily have respectively subscribed their names as surety to the promissory notes then present and before them. And we think it unreasonable to suppose that Maxwell would not have required them to do so, and that they would not have both subscribed the notes, if they had in fact agreed to become jointly liable for their payment. Indeed, to say nothing of this unusual position, it is doubtful whether the clause in the condition of the mortgage, relied upon by counsel for defendant in error to establish a joint liability and undertaking by Rossman and Kelley for the payment of the notes, even when taken by itself, by any means constitutes a joint undertaking. That clause reads as follows:
“And the said Rossman and Kelley covenant, promise, and agree, to pay the said sum of seven thousand dollars as above.” And *how they have promised and agreed “ above ?” Why, severally. They had respectively executed fourteen notes, and severally agreed to pay the same, as stated above in the same instrument.
We think that a fair and reasonable interpretation of the undertaking of the parties, deduced from the whole instrument, is, that the undertaking of Rossman and Kelley for the payment of their notes mentioned in the instrument, as understood by all the parties, was several, and not joint; and that the mortgage was neither intended nor understood by the parties as varying the contract already made ; but merely to insure its performance.
We therefore think that the district court erred in overruling the demurrer and holding the plaintiff in error jointly liable fox* the payment of the twenty-eight notes.
And for this cause the judgment of the district. court must be reversed.
Bartley, C. J., and Swan, Brinkerhopf, and Scott, JJ., concurred.